

# COURT OF APPEALS

**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

### NO. 02-13-00244-CR

MICHAEL AMOS                                                             APPELLANT

V.

THE STATE OF TEXAS                                                          STATE

----------

FROM CRIMINAL DISTRICT COURT NO. 4 OF TARRANT COUNTY
TRIAL COURT NO. 1322040R

----------

## OPINION

----------

A jury found Appellant Michael Amos guilty of the offense of cruelty to a nonlivestock animal. After finding an enhancement paragraph true, the jury assessed Appellant's punishment at thirty-one months' confinement in the Institutional Division of the Texas Department of Criminal Justice.[1] Appellant

---

[1]Appellant's charged offense constituted a state jail felony. Tex. Penal Code Ann. § 42.092(c) (West 2011). However, the State enhanced his offense with a prior murder conviction with an affirmative deadly weapon finding, making

asserts five issues in which he attacks, respectively, (1) the admission of a State's witness's recorded statement to the police, (2) the denial of his motion to quash the indictment, (3) the denial of six of his challenges for cause, (4) the denial of his objection to the charge, and (5) the denial of his motion to suppress. We affirm.

### Evidence

On May 13, 2011, then ten-year-old H.C. spent the night at Appellant's house with Appellant's daughter, W. That evening, Zoe, a Shih Tzu weighing about six or seven pounds, urinated and defecated in Appellant's and his girlfriend's bedroom, and Appellant got angry. Appellant asked where the broom was, and H.C. then saw Appellant walking back to the bedroom with a broom. H.C. heard Appellant shut the bedroom door so that only Appellant and Zoe were in the room, and then she heard Zoe "yelping and crying, like she was scared." H.C. said she then heard banging against the door for a while, but she did not know what was causing it.

Appellant then came out of the bedroom, and Zoe ran into the game room where H.C. and W. were and hid underneath the futon. H.C. thought Zoe seemed scared. Appellant then followed Zoe into the game room and, while H.C.

---

the offense punishable as a third degree felony. *Id.* § 12.35(c)(2)(B) (West Supp. 2014). The jury assessed Appellant's punishment at thirty-one months out of a possible 120 months. *Id.* § 12.34 (West 2011).

was sitting on the futon, tried to sweep Zoe out from underneath it with the broom.

H.C. said she got scared, got up, and went into the living room. W. followed her. While standing in the doorway, H.C. saw Appellant pulling on the part of the futon that sat against the wall and also saw Zoe "kind of crawl[ing] out." Then she described Appellant as "kind of hitting her like where she's out." H.C. said when Zoe tried to crawl out, Appellant would start to hit her with the broom. When asked to describe how Appellant was using the broom, she testified:

> A.  It was kind of like—see how to explain it.  He was poking sometimes and then kind of like hitting her, I guess.  I don't—like—like sideways.
>
> Q. Like—sort of like this (demonstrating)?
>
> A. Yeah.
>
> Q. Okay.  And is he hitting the futon or is he actually hitting Zoe?
>
> A. Actually hitting Zoe.
>
> Q. And can you tell which part of the broom is actually hitting her?  Is it the bristles or the part that holds all the bristles together?
>
> A. I don't remember.
>
> Q. Okay.  And, at that point, do you see Zoe move after that?
>
> A. No.
>
> . . .
>
> Q. Did you think that she was dead at that point?

3

A. Yes.

Later H.C. qualified what she actually saw:

A. I can see the broom, like, being, like, swung at her.

Q. Swung at her. But you can't tell where on Zoe's body she's being hit?

A. No. But there was only that half of her so . . .

Q. Is he hitting the futon or is he hitting Zoe?

A. I thought he was hitting Zoe.

H.C. concluded, "I see her not moving when he got done, when [Appellant] got done hitting her." H.C. said Appellant then told her to put Zoe outside.

The critical care nurse at Metro West Veterinary Emergency Center to whom Appellant spoke on the telephone before bringing Zoe in said that Appellant described Zoe as having been "flailing," which the nurse said indicated Zoe was in pain. The emergency and critical care specialist who examined Zoe at the Metro West Veterinary Emergency Center said Zoe had suffered a linear blunt force trauma injury to her head and eye consistent with being hit with a broom handle. She concluded linear blunt force trauma, consistent with being struck by a broom handle swung like a baseball bat and with considerable force, caused Zoe's death. When asked if Zoe would have felt pain, the specialist's response was, "Absolutely." Regarding her office's decision to contact the police, the specialist said she was obligated, as a veterinarian, to report any cases where she suspected animal cruelty. As a veterinarian, she said that she took an

4

oath to protect the welfare of animals under her care and that she had a duty to speak for those who could not.

A veterinarian at the veterinary diagnostic laboratory at Texas A & M University performed a necropsy on Zoe, a Shih Tzu, which the veterinarian described as a toy breed that was bred to provide companionship to humans. Small dogs like Zoe scare very easily, are not trained to attack or guard, and when caught in a stressful situation, will try to escape and hide. Another veterinarian had submitted Zoe for the necropsy, and although the veterinarian who performed the necropsy normally would not be allowed to discuss the case with anyone outside the laboratory, in this instance his records were subpoenaed. A necropsy is a systematic external and, by means of dissection, internal inspection of an animal. After examining Zoe, he determined that the cause of death was a severe intracranial hemorrhage that led to heart and respiratory failure. He described the cause as blunt trauma, which meant a relatively hard object caused the damage.

### The Admission of H.C.'s Recorded Statement

In his first point, Appellant argues that the trial court erred by admitting H.C.'s recorded statement to police (State's Exhibit 2A) because it was inadmissible hearsay under rule of evidence 801(d) and (e)(1)(A) and rule of evidence 613(a). However, a trial court's erroneous admission of evidence will not require reversal when other such evidence was received without objection, either before or after the complained-of ruling. *Estrada v. State,* 313 S.W.3d 274,

5

302 n.29 (Tex. Crim. App. 2010) (citing *Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998)), *cert. denied*, 131 S. Ct. 905 (2011); *Lane v State*, 151 S.W.3d 188, 193 (Tex. Crim. App. 2004). We have reviewed State's Exhibit 2A and H.C.'s testimony. The biggest difference between the two is that H.C. describes Appellant hitting Zoe with a broom in the recording but, in her testimony, acknowledges never actually seeing the broom strike the dog. Detective Brian Clouse, who conducted the interview, testified and described H.C.'s statement in the same manner as State's Exhibit 2A, that is, in terms of Appellant striking the dog without any qualifications. Appellant did not object to Detective Clouse's testimony. Therefore, we overrule his first point without reaching his hearsay arguments.

## **Whether the Indictment Alleged an Offense**

In Appellant's second point, he argues the trial court erred by denying his motion to quash the indictment for failing to allege an offense. Section 42.092(b) of the Texas Penal Code, which is entitled "Cruelty to Nonlivestock Animals," provides: "(b) A person commits an offense if the person intentionally, knowingly, or recklessly: (1) tortures an animal or in a cruel manner kills or causes serious bodily injury to an animal . . . ." Tex. Penal Code Ann. § 42.092(b)(1) (West 2011).[2] Appellant contends that, under this statute, causing serious bodily injury

---

[2]"Torture" is defined as "any act that causes unjustifiable pain or suffering." *Id.* § 42.092(a)(8). "Cruel manner" is defined as including "a manner that causes or permits unjustified or unwarranted pain or suffering." *Id.* § 42.092(a)(3).

to an animal is not an offense; rather, the statute requires a person to cause serious bodily injury in a cruel manner. Appellant complains that the indictment improperly alleges that causing serious bodily injury alone is a crime. But Appellant acknowledged at the hearing on the motion to quash that the indictment tracked the statute and conceded that, under the statute (and hence, the indictment), "a cruel manner" applied to both killing an animal or causing serious bodily injury.[3] The trial court denied Appellant's motion to quash.

An indictment that tracks the language of a criminal statue is sufficient to allege an offense. *See State v. Edmond*, 933 S.W.2d 120, 127 (Tex. Crim. App. 1996). The indictment here tracks the statutory language. We overrule Appellant's second point.

### The Denial of Six of Appellant's Challenges for Cause

In his third point, Appellant contends the trial court erred by denying six of his challenges for cause. Appellant contends six venire members said they would find someone guilty if the person killed an animal even if the State did not prove that the killing was in a cruel manner, that is, even if the State failed to prove pain and suffering.

An appellate court will reverse a trial court's ruling on a challenge for cause only in the case of a clear abuse of discretion. *Curry v. State*, 910 S.W.2d 490,

---

[3]Appellant's motion to quash attacked earlier versions of the indictment that did not track the statutory language. About a month before trial, the State filed an indictment tracking the statutory language.

493 (Tex. Crim. App. 1995). A clear abuse of discretion occurs only when the trial court's decision is so clearly wrong as to lie outside that zone within which reasonable persons might disagree. *Cantu v. State*, 842 S.W.2d 667, 682 (Tex. Crim. App. 1992), *cert. denied*, 509 U.S. 926 (1993). A trial court deciding a matter within its discretionary authority in a different manner than the appellate court would in a similar circumstance does not show an abuse of discretion. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990). When determining whether the trial court erred by refusing to excuse a juror, an appellate court must examine the record as a whole and accord due deference to the trial judge who was in a position to see and hear the venire person. *See McCoy v. State*, 713 S.W.2d 940, 945, 951 (Tex. Crim. App. 1986), *cert. denied*, 480 U.S. 940 (1987). When prospective jurors provide vacillating, unclear, or contradictory answers, appellate courts accord deference to the trial court's decision. *Russeau v. State*, 171 S.W.3d 871, 879 (Tex. Crim. App. 2005), *cert. denied*, 548 U.S. 926 (2006), *and cert. denied*, 548 U.S. 927 (2006).

At the start of voir dire, the trial court informed the members of the venire that if their silence was misleading, they had to speak up. After the six venire members said they would not follow the law, they did not speak up when asked if they would require the State to prove every element, as illustrated in the following exchange between defense counsel and the venire:

> [DEFENSE COUNSEL]: Beyond a reasonable doubt. So, if they prove—if at the close of the evidence, you say on one of the

8

elements, I don't care which one or all of them, he didn't do it, what's your verdict?

VENIRE WOMAN: Not guilty.

[DEFENSE COUNSEL]: I know you're tired, folks.

(Venire members respond, "Not guilty.")

. . .

[DEFENSE COUNSEL]: Can you follow the law and make them prove each and every element beyond a reasonable doubt?

(Venire members respond, "Yes.")

[DEFENSE COUNSEL]: If you're acting reasonable and find any doubt, you'll find him not guilty, even though you have to go home to your wife or husband and say, you know what, I had this case, I was pretty sure he did it, but I found him not guilty because I had to under the law. Can you do that?

(Venire members respond, "Yes.")

[DEFENSE COUNSEL]: Okay, Thank you, ma'am. Anybody else? Raise your hand if you cannot do that. If you can't, that's okay. Go ahead. If you can't follow the law in that respect.

(No response.)

[DEFENSE COUNSEL]: Or you can. It doesn't matter to me one way or another, you just got to be honest. Okay. That's okay. Everybody in the center, in the center, can you follow the law in that respect and make them prove each and every element beyond a reasonable doubt? And if you have a doubt and you're not sure he did it and you're like, man, I'm not sure about that element, I have a doubt about that element, can you find him not guilty and follow the law even though you're pretty sure he did it?

(Venire members respond, "Yes.")

[DEFENSE COUNSEL]: Can everybody do that in this center section?

9

(Venire members respond, "Yes.")

[DEFENSE COUNSEL]: Yes? Can everybody in this section? You won't lower the burden? You won't make it, well, I'm pretty sure he did it? You won't lower it. Everybody can follow the law, right? Really? You can? Okay. Thank you, ma'am. Anyone else?

(No response.)

[DEFENSE COUNSEL]: Anyone else? Because once you're over there, it's too late. If you can't do it, fine. You just got to tell me.

(No response.)

We agree with the State that the venire members effectively gave contradictory answers. Therefore, according deference to the trial court's decision, we conclude the trial court did not abuse its discretion. *See Leadon v. State*, 332 S.W.3d 600, 616 (Tex. App.—Houston [14th Dist.] 2010, no pet.) ("Most of those who, during the State's voir dire examination, originally indicated that they could not consider a life sentence were rehabilitated by remaining silent and not affirmatively stating that they wished to keep their previous response."); *Russeau*, 171 S.W.3d at 879; *Cubit v. State*, No. 03-99-00342-CR, 2000 WL 373821, at *1 (Tex. App.—Austin April 13, 2000, no pet.) (not designated for publication) (stating that by remaining silent when asked to respond if they would consider race, panelists answered they would not). We overrule Appellant's third issue.

10

## Appellant's Objection to the Charge

In his fourth point, Appellant contends the trial court erred by denying his objection to the jury charge for failing to allege an offense, arguing that causing serious bodily injury, standing alone, is not sufficient to constitute the offense under the cruelty-to-animals statute. Appellant argues the causing of serious bodily injury must be coupled with a "cruel manner." *See* Tex. Penal Code Ann. § 42.092(b). Appellant objected and requested that the "cruel manner" language be added to the serious-bodily-injury portion of the charging paragraph. The trial court denied Appellant's request. Appellant contends the jury could have convicted him for causing bodily injury without proof of a cruel manner, which is not an offense.

In our review of a jury charge, we first determine whether error occurred; if error did not occur, our analysis ends. *See Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). "A jury charge that tracks the language of a particular statute is a proper charge on the statutory issue." *Riddle v. State*, 888 S.W.2d 1, 8 (Tex. Crim. App. 1994), *cert. denied*, 514 U.S. 1068 (1995). The statute provides, "A person commits an offense if the person intentionally, knowingly, or recklessly: (1) tortures an animal or in a cruel manner kills or causes serious bodily injury to an animal." Tex. Penal Code Ann. 42.092(b)(1). The jury charge provided:

> Now, if you find from the evidence beyond a reasonable doubt
> that on or about the 13th day of May, 2011, in Tarrant County,
> Texas, the defendant, [Appellant], did then and there intentionally or

11

knowingly torture or in a cruel manner kill or cause serious bodily injury to an animal, to-wit: a dog, by hitting the dog with a broom or broomstick,

Or, if you find from the evidence beyond a reasonable doubt that on or about the 13th day of May, 2011, in Tarrant County, Texas, the defendant, [Appellant], did then and there recklessly, to-wit: by hitting the dog with a broom or broomstick, torture or in a cruel manner kill or cause serious bodily injury to an animal, to-wit: a dog, by hitting the dog with a broom or broomstick, then you will find the Defendant guilty of the offense of cruelty to animals as charged in the indictment.

Because the jury charge tracked the statutory language, the trial court did not err. *See Riddle*, 888 S.W.2d at 8. We overrule Appellant's fourth point.

### Denial of Appellant's Motion to Suppress

In his fifth point, Appellant contends the trial court abused its discretion by denying his motion to suppress the dog necropsy. Appellant argues a search warrant was required before a necropsy could be performed. Appellant states that dogs are property and that under the provisions of the Texas Health and Safety Code, dogs cannot be seized as property unless a probable cause warrant for seizure is first obtained. Tex. Health & Safety Code Ann. § 821.022 (West 2010); *see Thomas v. State*, 352 S.W.3d 95, 104 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd); *Chambers v. State*, 261 S.W.3d 755, 759 (Tex. App.—Dallas 2008, pet. denied).

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).

12

We give almost total deference to a trial court's rulings on questions of historical fact and application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor, but we review de novo application-of-law-to-fact questions that do not turn on credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002).

Dogs are classified as ordinary property. *Strickland v. Medlen*, 397 S.W.3d 184, 198 (Tex. 2013). Abandonment of property occurs if (1) the defendant intended to abandon the property and (2) his decision to abandon the property was not due to police misconduct. *McDuff v. State*, 939 S.W.2d 607, 616 (Tex. Crim. App.), *cert. denied*, 522 U.S. 844 (1997); *Brimage v. State*, 918 S.W.2d 466, 507 (Tex. Crim. App. 1994), *cert. denied*, 519 U.S. 838 (1996). Abandonment is primarily a question of intent to be inferred from words spoken, acts done, and other objective facts and relevant circumstances. *McDuff*, 939 S.W.2d at 616. The issue is not abandonment in the strict property-right sense, but rather whether the accused had voluntarily discarded, left behind, or otherwise relinquished his interest in the property so that he could no longer retain a reasonable expectation of privacy with regard to it at the time of the search. *Id.* Additionally, when a defendant abandons property, he lacks standing to contest the reasonableness of the search of the abandoned property. *Id.* We can sustain a trial court's denial on the ground that the evidence failed to

13

establish standing as a matter of law even when the record does not show the issue was ever considered by the parties or the trial court. *Id.*

In *McDuff*, the defendant was seen, using another car, pushing his car into a motel parking lot, where it remained for six days before the police towed it away. *Id.* The police thereafter searched the car three times and recovered papers bearing the defendant's name, hair that was eventually determined to be similar to the victim's, and blood spots in the carpeting. *Id.* The State argued the defendant had abandoned the car and had forsaken any reasonable expectation of privacy in it, and the court agreed. *Id.* at 616–17. In support of its holding that the defendant had abandoned the car, the court stated that the defendant had pushed the car into the motel parking lot without any police involvement, the defendant was in possession of another vehicle, and the defendant was found approximately two months later in another state living under other names. *Id.*

Appellant relinquished Zoe's body to the veterinarian and requested a communal cremation. In communal cremations, the ashes are commingled with those of other animals and are not returned to the owner, unlike in a private cremation where the dog's ashes are returned to the owner. Because Appellant had no intention of reclaiming Zoe's body or her ashes, we hold that Appellant voluntarily discarded, left behind, and otherwise relinquished his interest in them such that he could no longer retain a reasonable expectation of privacy and, therefore, that he lacked standing to contest the reasonableness of any search. *See id.* at 616. The Metro West Veterinary Emergency Center made the decision

14

to send Zoe's body for a necropsy. The veterinarian who performed the necropsy produced his records only after being subpoenaed. Because there is no evidence suggesting the police were in any way involved in Appellant's decision to abandon Zoe's body, we further hold that it was not due to police misconduct. *Id.* We overrule Appellant's fifth point.

## Conclusion

Having overruled all of Appellant's points, we affirm the trial court's judgment.

/s/ Anne Gardner
ANNE GARDNER
JUSTICE

PANEL: DAUPHINOT, GARDNER, and WALKER, JJ.

PUBLISH

DELIVERED: July 2, 2015

15