# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-17-00281-CR

**James Russell Faglie, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 390TH JUDICIAL DISTRICT
### NO. D-1-DC-15-100235, THE HONORABLE JULIE H. KOCUREK, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury found appellant James Russel Faglie guilty of continuous sexual abuse of

a child for sexually abusing his biological daughter, J.F., *see* Tex. Penal Code § 21.02(b), and

assessed his punishment at confinement for 35 years in the Texas Department of Criminal Justice,

*see id.* § 21.02(h).[1]   On appeal, appellant complains about the trial court's limitation of his

---

[1]   The jury heard evidence that during a time period of approximately five or six years, beginning when J.F. was eight or nine years old (in the fourth or fifth grade) and lasting until she was 14 (when she made an outcry), appellant perpetrated various sexual acts against J.F. on multiple occasions, including touching her leg with his bare penis (as he attempted to put his penis inside her shorts), rubbing her vagina, over her clothing, with his hand (moving his fingers in a circular motion), forcing her to masturbate him (by grabbing her wrist, manipulating her hand into a circular shape, and moving her hand up and down his bare erect penis), and contacting and penetrating her vagina with his penis (as he tried to force his erect penis inside of her, causing her to feel pressure and pain when it "went in a little bit").   Because the parties are familiar with the facts of the case, its procedural history, and the evidence adduced at trial, we do not further recite them in this opinion except as necessary to advise the parties of the Court's decision and the basic reasons for it. *See* Tex. R. App. P. 47.1, 47.4.

cross-examination of J.F., the admission of hearsay evidence, the admission of extraneous-conduct evidence, and the cumulative harm resulting from trial error. We affirm the trial court's judgment of conviction.

## DISCUSSION

Appellant raises seven points of error. In six of them, appellant challenges the trial court's evidentiary rulings. In his first point of error, he claims that the trial court erred in refusing to allow him to cross-examine J.F. about pornographic digital evidence. In his second point of error, appellant contends that the trial court erred by admitting J.F.'s hearsay statements to the nurse practitioner who conducted the sexual-assault exam. In his third point of error, he asserts that the trial court erroneously admitted "backdoor hearsay" through the detective's testimony about J.F.'s forensic interview. In his fourth, fifth, and sixth points of error, appellant complains about the admission of the testimony concerning appellant's extraneous sexual abuse of his stepdaughter. In his final point of error, appellant argues that the "cumulative effect" of trial error requires reversal.

## Standard of Review

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Henley v. State*, 493 S.W.3d 77, 82–83 (Tex. Crim. App. 2016); *Sandoval v. State*, 409 S.W.3d 259, 297 (Tex. App.—Austin 2013, no pet.). An abuse of discretion does not occur unless the trial court acts "arbitrarily or unreasonably" or "without reference to any guiding rules and principles." *State v. Hill*, 499 S.W.3d 853, 865 (Tex. Crim. App. 2016) (quoting *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990)). Further, we may not reverse the trial court's

2

ruling unless the determination "falls outside the zone of reasonable disagreement." *Johnson v. State*, 490 S.W.3d 895, 908 (Tex. Crim. App. 2016); *see Henley*, 493 S.W.3d at 83 ("Before a reviewing court may reverse the trial court's decision, 'it must find the trial court's ruling was so clearly wrong as to lie outside the zone within which reasonable people might disagree.'" (quoting *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008))). An evidentiary ruling will be upheld if it is correct on any theory of law applicable to the case. *Henley*, 493 S.W.3d at 93; *Sandoval*, 409 S.W.3d at 297.

## Limitation of Cross-Examination

The record reflects that four months after J.F. disclosed the sexual abuse that appellant perpetrated against her, J.F.'s foster mother found an iPad that had images of J.F. sitting nude in front of a mirror engaging in "sexual acts on herself." Apparently, J.F. had sent the images to her boyfriend, I.R., through a messaging application on the iPad.[2] At trial, appellant wanted to cross-examine J.F. about this "sexting,"[3] claiming that it demonstrated J.F.'s motive to fabricate the sexual-abuse allegations against appellant. According to appellant, the sexting showed the nature of J.F.'s relationship with I.R., which he claimed was a relationship that he disapproved of and tried to prevent. He maintained that J.F. falsely accused him of sexual abuse in order to remove him as an obstacle to her relationship with I.R.

---

[2] Because I.R. was a juvenile, we refer to him using his initials to protect his identity.

[3] *See* https://www.thefreedictionary.com/sexting (defining "sexting: as "the digital transmission of sexually explicit messages or images, especially photographs or videos of oneself, usually by cell phone"); https://www.dictionary.com/browse/sexting (defining "sexting" as "the sending of sexually explicit digital images, videos, text messages, or emails, usually by cell phone").

The State objected, asserting that the sexting evidence was inadmissible under Rule 412 of the Texas Rules of Evidence. During the ensuing discussion, appellant asserted that the evidence was admissible "under [the] confrontation clause or [Rule] 412" to show J.F.'s bias and motive "to get [appellant] out of the way" so she could engage in a "pretty serious relationship" with I.R. The trial court concluded that the evidence was not relevant to J.F.'s bias or motive to fabricate the allegations because the sexting occurred months after J.F.'s outcry. Further, because it was not relevant, the trial court concluded that the evidence did not have any probative value. Accordingly, the trial court did not allow appellant to question J.F. about the digital evidence.

In his first point of error, appellant asserts that the trial court abused its discretion in refusing to allow him to question J.F. about the digital evidence, which he labels "obscene" and "Ipad porn," because the limitation of his cross-examination violated this right to confrontation.

Rule 412, the "rape shield" provision, is primarily a rule of exclusion that applies in any prosecution for "sexual assault, aggravated sexual assault, or attempt to commit sexual assault or aggravated sexual assault." Tex. R. Evid. 412(a). It explicitly declares to be inadmissible evidence of a sexual-assault victim's "past sexual behavior" when that evidence takes the form of reputation or opinion testimony. Tex. R. Evid. 412(a)(1). The rule similarly declares inadmissible any evidence in the form of specific instances of the victim's sexual behavior. Tex. R. Evid. 412(a)(2). But this latter, specific-instance prohibition comes with specific and exclusive exceptions. Tex. R. Evid. 412(b)(2). However, even if the proponent of the evidence of past sexual conduct can satisfy his burden to demonstrate its relevance and an applicable exception, the evidence of specific instances of past sexual behavior must still be excluded unless the probative value of the

4

evidence outweighs the danger of unfair prejudice. Tex. R. Evid. 412(b)(3). And, unlike Rule 403 of the Texas Rules of Evidence, which embodies a presumption of admissibility of relevant evidence even if it has some potential to be unfairly prejudicial, *see* Tex. R. Evid. 403 (trial court may exclude relevant evidence if its probative value is substantially outweighed by danger of, among other things, unfair prejudice); *Montgomery v. State*, 810 S.W.2d 372, 389 (Tex. Crim. App. 1991) (op. on reh'g) ("Rule 403 favors admissibility of relevant evidence, and the presumption is that relevant evidence will be more probative than prejudicial."), Rule 412(b)(3) tips the scale against admissibility of such evidence. *Robisheaux v. State*, 483 S.W.3d 205, 223–24 (Tex. App.—Austin 2016, pet. ref'd) (noting that Rule 412 balancing test is more stringent than Rule 403 balancing and weighs against admissibility); *see* Cathy Cochran, TEXAS RULES OF EVIDENCE HANDBOOK 364 & 370 (6th ed. 2006) ("Rule 412 reverses the normal balance of probative value versus prejudicial effect. . . . Unlike the general Rule 403 balance that tips toward admissibility, under Rule 412, the defendant must show that the probative value of the evidence outweighs its unfairly prejudicial effect.").

The particular Rule 412 exceptions at issue in this case involve the admissibility of specific instances of past sexual behavior if the evidence "relates to the victim's motive or bias," *see* Tex. R. Evid. 412(b)(2)(C), or "is constitutionally required to be admitted," *see* Tex. R. Evid. 412(b)(2)(E). The proponent of challenged evidence generally has the burden of establishing its admissibility by a preponderance of the evidence. *White v. State*, 549 S.W.3d 146, 151–52 (Tex. Crim. App. 2018); *Pierson v. State*, 426 S.W.3d 763, 771 (Tex. Crim. App. 2014); *Vinson v. State*, 252 S.W.3d 336, 340 & n.14 (Tex. Crim. App. 2008). Thus, in the context of this case, it was appellant who was required to shoulder the burden to demonstrate the admissibility of the "Ipad

5

porn" despite Rule 412's general rule of exclusion. Under the "motive or bias" exception, it was appellant's obligation to establish that the evidence about the sexting related to J.F.'s motive or bias to falsely accuse appellant, that it was probative on the issue of J.F.'s motive or bias to make the false allegations of sexual assault, and that it was more probative than unfairly prejudicial. Under the "constitutionally required" exception, it was appellant's obligation to establish that the Confrontation Clause, *see* U.S. Const. amend. VI (guaranteeing accused in criminal prosecution right to confront witnesses against him), required the sexting evidence to be admitted and that it was more probative than unfairly prejudicial. Because the burden for either exception was appellant's, any ambiguity in the evidence must operate to his detriment.

Here, the trial court concluded that the evidence of J.F.'s sexting was "not relevant." The record supports the trial court's determination that the sexting evidence was not relevant because it was not related to J.F.'s motive or bias to falsely accuse appellant. First, as the trial court noted, the images were discovered after J.F.'s outcry and after appellant was arrested on the sexual-abuse charges. Second, the defensive theory at trial was that appellant sought to prevent J.F. from engaging in a relationship with I.R. because he allegedly disapproved of it. However, no evidence before the trial court showed that appellant was an obstacle to the relationship or that he disapproved of it. In fact, the evidence before the court when appellant sought to cross-examine J.F. about the sexting showed the opposite—that appellant approved of I.R. and of J.F.'s relationship with him.[4] Based

---

[4] During cross-examination of J.F., appellant's counsel established that J.F. met I.R. through her sister, who dated I.R.'s brother, when she was 11, and they started "dating" when she was 13. J.F. "hung out" with I.R. when she was at her mother's because I.R. lived near her mother.

Appellant's counsel questioned J.F. about appellant's opinion of her relationship with I.R.:

> Q. And your father didn't approve of you seeing [I.R.] so much, did he?
>
> A. Yes, he did.
>
> Q. So it's your testimony that your father approved of [I.R.]?
>
> A. Yes.
>
> Q. Even though he was several years older than you, right?
>
> A. Yes.

Later, appellant's counsel discussed the fact that J.F. continued her relationship with I.R. when she was living with her sister after her outcry about appellant's sexual abuse. Again, J.F.'s testimony indicated that appellant approved of the relationship:

> Q. All right. And the one person that would have stopped [the continued relationship] from happening would have been your father, right?
>
> A. I'm guessing yes.
>
> Q. Okay. Well, your father would -- you would still be living with your father, I mean, he did not want you to continue to see [I.R.] to the point where you all would be living together, right?
>
> A. Probably not to that point, but he would still allow me to see him. He was totally fine with us. I even asked him before we even dated that if I could date him. Like, I asked him -- well, I didn't ask him if I could date him. I asked him if it happened, because he knew that I liked him.
>
> Q. Okay. Well, he knew that you liked him. But he still put restrictions on you from seeing him. Isn't that a fact?
>
> A. No.
>
> Q. Well, it was your mother who knew that you were going to see him, right? You would go over –

on the evidence before it, the trial court could have reasonably concluded that appellant failed to establish that evidence of the sexting related to J.F.'s motive to falsely accuse appellant or her bias against him.

Further, regarding appellant's claim that his right to confrontation satisfied the "constitutionally required" exception for the admission of the sexting evidence, the exclusion of a victim's prior sexual history has generally been held not to violate a defendant's confrontation and cross-examination rights. *See Allen v. State*, 700 S.W.2d 924, 930–31 (Tex. Crim. App. 1985) (recognizing that "[t]here have been numerous attacks upon the so-called rape shield statutes as violative of the Sixth Amendment and these generally have been rejected" because "'the right to confront and to cross-examine is not absolute and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process'" (quoting *North Carolina v. Fortney*, 269 S.E.2d 110, 113 (N.C. 1980))). "[T]he right to cross-examine is not unqualified." *Johnson*, 490 S.W.3d at 909. Trial judges "'retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination,' so long as those limits do not operate to infringe upon the Confrontation Clause's guarantee of 'an *opportunity* for effective cross-examination.'" *Johnson v. State*, 433 S.W.3d 546, 551–52 (Tex. Crim. App. 2014) (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)). In its discretion, the trial court may impose reasonable limits on cross-examination to avoid harassment, prejudice, confusion of the issues,

---

A. Whenever we started dating, he knew, too, my father knew, too, my mother knew, too, everybody knew, too.

J.F.'s testimony also reflected that she went on a week-long trip to the Texas coast with I.R. and his family, and that J.F. sought—and obtained—appellant's permission to take the trip with I.R.

endangering the witness, the injection of cumulative or collateral evidence, or interrogation that is repetitive or only marginally relevant. *Johnson*, 490 S.W.3d at 910; *Lopez v. State*, 18 S.W.3d 220, 222 (Tex. Crim. App. 2000).

The Confrontation Clause does not guarantee cross-examination that is effective in whatever way, and to whatever extent, the defense might wish. *Van Arsdall*, 475 U.S. at 679; *see Johnson*, 490 S.W.3d at 910 (noting that Confrontation Clause does not provide defendant "an absolute right to impeach the general credibility of a witness"); *Hammer v. State*, 296 S.W.3d 555, 562–63 (Tex. Crim. App. 2009) (same). The test to determine the scope of cross-examination demanded by the Confrontation Clause is whether the defendant could present a vital defense theory without the evidence, not whether the defensive theory is as strong as it could be with the evidence. *See Johnson*, 433 S.W.3d at 557 ("[A] 'less than optimal' opportunity for cross-examination does not, of itself, violate the Sixth Amendment."). As long as the judge permits sufficient cross-examination to satisfy the Sixth Amendment, the trial judge has the ability to restrict the scope of cross-examination. *Id.* at 551–52.

In this case, appellant was able to show J.F.'s purported motive or bias to falsely accuse appellant through other means. He was able to present the nature of J.F.'s relationship with I.R. through alternative evidence in order to advance his defensive theory: J.F.'s testimony about the nature of her relationship with I.R., her feelings toward him, and her subsequent pregnancy by him; her aunt's testimony that J.F. was having "unprotected sex" with her boyfriend and that J.F. "[knew] how to get her way if she really wants something"; and evidence that J.F. was, at the time of trial, living with I.R. and their baby at his parents' house. Because appellant had the opportunity

9

to establish J.F.'s relationship with I.R., which he contended demonstrated her potential bias towards him and motive to falsely accuse him, the Confrontation Clause did not require admission of J.F.'s specific instance of sexting. *See, e.g.*, *Hammer*, 296 S.W.3d at 568 (concluding that because appellant presented general defensive theory to jury through alternate testimony, exclusion of evidence did not offend Confrontation Clause). Thus, because the Sixth Amendment did not require the evidence's admission, the trial court could have reasonably concluded that appellant failed to establish that the sexting evidence was constitutionally required to be admitted.

Moreover, even had appellant shown relevance and an applicable exception, the trial court could have reasonably concluded that the probative value of the sexting evidence did not outweigh the danger of unfair prejudice under Rule 412(b)(3). First, the probative value of the evidence, given the post-outcry nature of it, is objectively weak. That J.F.'s subsequent sexting bore directly on her motivation to accuse appellant of sexual assault because it would "show the depths of her feelings" toward I.R. and thus her desire to "get [appellant] out of the way" of the relationship—four months after she made her outcry about appellant's sexual abuse and without any evidence demonstrating that appellant was in fact an obstacle to the relationship—is a tenuous connection at best. *See Irby v. State*, 327 S.W.3d 138, 152 (Tex. Crim. App. 2010) (interpreting *Davis v. Alaska*, 415 U.S. 308 (1974), and requiring a "logical connection between the evidence suggesting bias or motive and the witness's testimony"). Second, the trial court could have concluded that the sexting evidence was unfairly prejudicial as, during the same discussion, the court agreed to allow appellant to cross-examine J.F. about becoming pregnant by I.R. after her outcry and after her father was arrested for sexually abusing her.

Furthermore, the trial court was free to consider the potential prejudice to J.F. had she been forced to discuss the particulars of her sexting behavior in front of 12 strangers in open court. *See Gotcher v. State*, 435 S.W.3d 367, 373 (Tex. App.—Texarkana 2014, no pet.) (explaining that "the unfair prejudice language contemplates prejudice not only to the State, but also to the victim, who will potentially be stigmatized if the defendant is able to introduce evidence of prior sexual behavior"); *Montgomery v. State*, 415 S.W.3d 580, 584 (Tex. App.—Amarillo 2013, pet. ref'd) (noting that disclosure of prior sexual conduct would have subjected complainant to "ridicule or humiliation"); *Stephens v. State*, 978 S.W.2d 728, 733 (Tex. App.—Austin 1998, pet. ref'd) ("In light of the underlying policies of Rule 412, it is reasonable to assume the 'unfair prejudice' language therein includes prejudice to the victim, who will potentially be stigmatized if the defendant is able to introduce evidence of sexual behavior."); *Cooper v. State*, 959 S.W.2d 682, 685 (Tex. App.—Austin 1997, pet. ref'd) (noting that proffered evidence of prior sexual conduct would have subjected complainant to ridicule, embarrassment, and humiliation).

Under Rule 412, the proponent of evidence bears the burden of establishing that the probative value outweighs the danger of unfair prejudice. *Robisheaux*, 483 S.W.3d at 224; *Gotcher*, 435 S.W.3d at 373–74. The record here supports the trial court's conclusion that the evidence's minimal probative value, if any, was outweighed by a great danger of unfair prejudice. Accordingly, on this record, the trial court reasonably could have determined that appellant failed to rebut Rule 412(b)(3)'s general presumption of unfair prejudice by a preponderance of the evidence and excluded the evidence on that basis.

In sum, the trial court could have reasonably concluded that the sexting evidence was not related to J.F.'s motive or bias to falsely accuse appellant and that the Sixth Amendment did not require the evidence's admission as he could present his defense without it. Thus, the trial court could have reasonably concluded that the evidence was not admissible under either of the applicable exceptions allowing for the admission of specific instances of past sexual behavior. Further, the trial court could have reasonably concluded that the minimal probative value of the sexting evidence, if any, did not outweigh the danger of unfair prejudice. Consequently, the trial court's ruling limiting appellant's cross-examination of J.F. to exclude the sexting evidence was not beyond the zone of reasonable disagreement. *Compare Pierson*, 426 S.W.3d at 771–72 (holding that appellant, as proponent of evidence, failed to carry burden to establish its admissibility, and therefore evidence was inadmissible), *with Johnson*, 490 S.W.3d at 913 (concluding that excluded evidence "was admissible under Rule 412 because it related to [victim's] motive to fabricate the accusation, was constitutionally required to be admitted under the Confrontation Clause, and the probative value outweighed the danger of unfair prejudice"). Therefore, we conclude that the trial court's decision to prohibit appellant from cross-examining J.F. about the sexting was not an abuse of discretion. We overrule appellant's first point of error.

### Hearsay Statements to Nurse

Approximately one month after the sexual abuse was reported to police (which was on the day that J.F. made her outcry), Lisa Butterworth, a certified pediatric nurse practitioner and certified sexual assault nurse examiner (SANE), performed a sexual-assault examination on J.F. at the request of law enforcement. At trial, the State offered the nurse's testimony about the

12

examination, including the statements that J.F. made to her about the sexual abuse. The State offered the hearsay statements pursuant to Rule 803(4), an exception to the hearsay rule that allows for the admission of statements made for purposes of medical diagnosis or treatment. *See* Tex. R. Evid. 803(4). In his second point of error, appellant argues that the trial court erroneously admitted the nurse's testimony about J.F.'s statements to her under the hearsay exception contained in Rule 803(4) because the State failed to satisfy its burden of showing that J.F.'s statements qualified under the medical diagnosis or treatment exception.

Hearsay is a statement, other than one made by the declarant while testifying at a trial, offered in evidence to prove the truth of the matter asserted. Tex. R. Evid. 801(d). Hearsay is generally inadmissible except as provided by the rules of evidence or statute. Tex. R. Evid. 802. The hearsay exception under Rule 803(4) applies to any statement that: "(A) is made for—and is reasonably pertinent to—medical diagnosis or treatment; and (B) describes medical history; past or present symptoms or sensations; their inception; or their general cause." Tex. R. Evid. 803(4). To establish this exception, the proponent of the evidence must show that (1) the out-of-court declarant was aware that the statements were made for purposes of medical diagnosis or treatment, and that proper diagnosis or treatment depended upon the veracity of the statements, and (2) the statements are pertinent to diagnosis or treatment, that is, it was reasonable for the care provider to rely on the statements in diagnosing or treating the declarant. *Taylor*, 268 S.W.3d at 588–89, 591; *Fahrni v. State*, 473 S.W.3d 486, 497 (Tex. App.—Texarkana 2015, pet. ref'd); *Prieto v. State*, 337 S.W.3d 918, 921 (Tex. App.—Amarillo 2011, pet. ref'd); *Mbugua v. State*, 312 S.W.3d 657, 670–71 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd).

13

Prior to Nurse Butterworth's testimony, appellant requested a hearing outside the presence of the jury. During that hearing, Nurse Butterworth confirmed that, before the interview and evaluation of J.F., she explained the purpose of the evaluation to J.F. Specifically, the nurse testified that she "explained to [J.F.] that it was a medical exam, a medical evaluation." Nurse Butterworth conceded that she did not explain to J.F. "the importance of being truthful and complete in her responses," but indicated that J.F. was 14 years old at the time of the exam and appeared to be developmentally normal. At the conclusion of the hearing, appellant objected to the admission of the nurse's testimony in front of the jury, arguing that the predicate for the hearsay exception had not been satisfied.[5] Specifically, appellant asserted that the statements that J.F. made to Nurse Butterworth did not qualify under the medical diagnosis or treatment exception because there was no evidence that J.F. was advised about or understood the importance of telling the truth to the nurse.

In response to appellant's hearsay objection, the trial judge questioned Nurse Butterworth: "Did [J.F.] appear to understand that she needed to tell you -- well, she was at the doctor and she needed to answer your questions for her medical treatment?" The nurse responded, "Yes." The judge asked whether there was "any misunderstanding about that." Nurse Butterworth said, "No." The trial judge overruled appellant's hearsay objection, opining that "I don't think it's reasonable to think that we have to have nurses and doctors swearing children in

---

[5] Appellant also objected to the testimony because Nurse Butterworth used particular terminology that he claimed was not "medical terminology" and because he disputed her qualifications as an expert, claiming that nurses are not qualified to make medical diagnoses. Appellant does not raise these claims in this appeal.

when they ask them questions about their alleged sexual abuse." Appellant asked the court to "note [his] objection" and asked for a running objection.

To preserve error, a party must timely object and state the grounds for the objection with enough specificity to make the trial judge aware of the complaint, unless the specific grounds were apparent from the context. Tex. R. App. P. 33.1(a)(1)(A); *see Thomas v. State*, 505 S.W.3d 916, 924 (Tex. Crim. App. 2016); *Yazdchi v. State*, 428 S.W.3d 831, 844 (Tex. Crim. App. 2014). The objection must be sufficiently clear to give the judge and opposing counsel an opportunity to address and, if necessary, correct the purported error. *Thomas*, 505 S.W.3d at 924; *Pena v. State*, 353 S.W.3d 797, 807 (Tex. Crim. App. 2011); *Ford v. State,* 305 S.W.3d 530, 533 (Tex. Crim. App. 2009). If a trial objection does not comport with arguments on appeal, error has not been preserved. *Thomas*, 505 S.W.3d at 924; *Goff v. State*, 931 S.W.2d 537, 551 (Tex. Crim. App. 1996); *see also Yazdchi*, 428 S.W.3d at 844.

At trial, appellant objected to the admission of J.F.'s statements to the nurse under the medical diagnosis or treatment exception because, according to appellant, there was no assurance that J.F. understood the necessity to speak truthfully to the nurse. On appeal, appellant does not argue—as he did at trial—that the State failed to show that J.F. "was aware that the statements were made for purposes of medical diagnosis or treatment, and that proper diagnosis or treatment depended upon the veracity of the statements." *See Taylor*, 268 S.W.3d at 588–89, 591. Instead, he asserts in his brief that "[t]he State failed to meet its burden of proving that J.F.'s hearsay statements were admissible" because "J.F. had no need for a medical diagnosis or for medical treatment related to a sexual assault." He maintains that, at the time of the evaluation, "there was,

15

in fact, no condition, or suspected condition, that needed treatment" and, therefore, "her hearsay statements could not have been with the purpose of explaining the cause of a medical condition." Appellant's complaint before this Court asserts that the statements were not made for purposes of medical diagnosis or treatment but simply as part of a forensic gathering of evidence—a follow-up pursuant to the investigative protocol of law enforcement. That is, he disputes that J.F.'s statements were "pertinent to diagnosis or treatment." *See* Tex. R. Evid. 803(4)(A).

The medical diagnosis or treatment exception of Rule 803(4) has two components: veracity and pertinence. *See Taylor*, 268 S.W.3d at 588–89, 591. While it is clear from the context of appellant's objection at trial that appellant objected to the admission of J.F.'s statements under the medical diagnosis or treatment exception, his argument at trial focused solely on the issue of veracity. The issue of pertinence was not raised at all. The entirety of the court's discussion with the State and appellant's counsel centered on what the nurse communicated to J.F. about the purpose of the exam, whether J.F. understood that purpose, and whether that understanding constituted an understanding of the need to be truthful. On appeal, rather than the alleged lack of indicia of J.F.'s awareness and understanding of veracity asserted at trial, appellant's complaint now centers upon his contention that the statements were not pertinent to medical diagnosis or treatment because the sexual-assault exam was performed one month after the outcry of the abuse when no acute medical treatment was necessary. The issue, as presented on appeal, does not comport with the objection argued at trial. Further, appellant's failure to state, or even allude to, the pertinence component of the exception under Rule 803(4) deprived the trial court and the State of the opportunity to address or correct the purported error. *See Smith v. State*, 499 S.W.3d 1, 7–8 (Tex. Crim. App. 2016)

16

("There are two main purposes behind requiring a timely and specific objection. First, the judge needs to be sufficiently informed of the basis of the objection and at a time when he has the chance to rule on the issue at hand. Second, opposing counsel must have the chance to remove the objection or provide other testimony.").

Thus, the record reflects that appellant failed to properly preserve his complaint that the trial court erred in admitting the nurse's testimony about J.F.'s statements to her about the sexual abuse because the State failed to demonstrate the pertinence component of the exception. *See, e.g.*, *San German-Reyes v. State*, No. 03-15-00432-CR, 2017 WL 2229873, at *9 (Tex. App.—Austin May 17, 2017, no pet.) (mem. op., not designated for publication) (concluding that appellant failed to preserve complaint regarding veracity component of medical-diagnosis hearsay exception when trial objection complained only about pertinence component).

Moreover, even if we were to assume that the issue has been properly preserved, the admission of the complained-of testimony does not warrant reversal because, assuming arguendo that the trial court erred in admitting the evidence because the State failed to establish the predicate of the medical diagnosis or treatment exception, any error in admitting Nurse Butterworth's testimony about J.F.'s statements regarding the sexual abuse did not harm appellant.

The erroneous admission of evidence is non-constitutional error. *Sandoval*, 409 S.W.3d at 287; *see Barshaw v. State*, 342 S.W.3d 91, 93 (Tex. Crim. App. 2011); *Casey v. State*, 215 S.W.3d 870, 885 (Tex. Crim. App. 2007). Non-constitutional error requires reversal only if it affects the substantial rights of the accused. *See* Tex. R. App. P. 44.2(b); *Barshaw*, 342 S.W.3d at 93; *Sandoval*, 409 S.W.3d at 287. "'A substantial right is affected when the error had a substantial

17

and injurious effect or influence in determining the jury's verdict.'" *Thomas*, 505 S.W.3d at 926 (quoting *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997)).  We will not overturn a criminal conviction for non-constitutional error if, after examining the record as a whole, we have fair assurance the error did not influence the jury or influenced the jury only slightly.  *Barshaw*, 342 S.W.3d at 93; *Sandoval*, 409 S.W.3d at 287.

It is well settled that the improper admission of evidence is rendered harmless when other evidence proving the same fact is properly admitted elsewhere (or comes in elsewhere without objection).  *Brooks v. State*, 990 S.W.2d 278, 287 (Tex. Crim. App. 1999); *Anderson v. State*, 717 S.W.2d 622, 627 (Tex. Crim. App. 1986); *Land v. State*, 291 S.W.3d 23, 28 (Tex. App.—Texarkana 2009, pet. ref'd); *Russell v. State*, 290 S.W.3d 387, 399 (Tex. App.—Beaumont 2009, no pet.); *Sanchez v. State*, 269 S.W.3d 169, 172 (Tex. App.—Amarillo 2008, pet. ref'd); *Hitt v. State*, 53 S.W.3d 697, 708 (Tex. App.—Austin 2001, pet. ref'd); *cf. Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998) (overruling of objection to evidence will not result in reversal when other such evidence was received without objection, either before or after the complained-of ruling); *Amos v. State*, 478 S.W.3d 764, 768-69 (Tex. App.—Fort Worth 2015, pet. ref'd); *Saldinger v. State*, 474 S.W.3d 1, 7 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd); *Lund v. State*, 366 S.W.3d 848, 857 (Tex. App.—Texarkana 2012, pet. ref'd).

Here, Nurse Butterworth testified only very briefly, in general terms, about what J.F. told her about the sexual abuse, stating that "[J.F.] said that her father had touched her in a way that he wasn't supposed to" and "that his private part had touched her private area in the middle where she uses the restroom."  The nurse also gave a general time frame for the abuse, stating that J.F. told

18

her that the abuse "started when she was nine or ten" and had ended two months before the visit to Nurse Butterworth when she was 14. Prior to Nurse Butterworth's testimony, however, J.F. had already testified about the details of the sexual abuse. In addition, her mother had already testified about J.F.'s outcry disclosing the sexual abuse. Their testimony established the same facts, in much greater detail, as the challenged portions of Nurse Butterworth's testimony.

Having reviewed the record as a whole, we conclude that even assuming the challenged portions of the nurse's testimony were improperly admitted, because Nurse Butterworth's limited testimony was duplicative of the testimony of J.F. and her mother, any error in admitting the testimony did not affect appellant's substantial rights and was harmless. *See Anderson*, 717 S.W.2d at 627 ("Whether or not the testimony complained of was admissible as an exception to the hearsay rule is irrelevant. If the fact to which the hearsay relates is sufficiently proved by other competent and unobjected to evidence, as in the instant case, the admission of the hearsay is properly deemed harmless and does not constitute reversible error."); *see, e.g.*, *San German-Reyes*, 2017 WL 2229873, at *11–12; *Infante v. State*, 404 S.W.3d 656, 663 (Tex. App.—Houston [1st Dist.] 2012, no pet.); *Land*, 291 S.W.3d at 28; *Greene v. State*, 287 S.W.3d 277, 285 (Tex. App.—Eastland 2009, pet. ref'd); *Smith v. State*, 236 S.W.3d 282, 300 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd).

For the above reasons, we overrule appellant's second point of error.

### "Backdoor" Hearsay

At trial, Russell Lutey, a detective with the child abuse unit of the Austin Police Department, testified about the steps he took to investigate the sexual-abuse allegation against

19

appellant after J.F.'s outcry. Regarding the role of J.F.'s forensic interview, the following exchange occurred:

Q. Okay. So let me ask you, was there a forensic interview done with [J.F.] on that day?

A. Yes.

Q. Okay. And so as a result of that, you said you went back to review it, so you knew what was being said. What is your next step in the investigation?

A. The next step normally would be to meet with the parents after the forensic interview, but I wasn't there so I didn't meet with them, so for me the next step was to go over, watch the video, make notes as to what she said in there in the forensic interview, and from the forensic interview determine, you know, whether or not we have enough to move forward criminally. In this case we did. She made several allegations.

At that point, appellant raised a hearsay objection, which the trial court sustained. Appellant asked for an instruction for the jury to disregard, and the trial court instructed the jury "to disregard the last statement of this witness."

Questioning by the prosecutor continued:

Q. What did you do after that day?

A. After that day I made some more phone calls, did some more follow-up. I tried to contact her sister, [M.H.].

Q. I'm sorry, can you repeat that?

A. Sure. After the forensic interview, I just continue with my investigation and I start to try to find witnesses or outcry witnesses as well, so I start talking to family members, tried to make a contact with [M.H.], who is [J.F.]'s half sister.

20

Q.  Okay.  And you said you reviewed the forensic interview, and why is it that it's important that you are privy or you know what is being said in that interview?

At that point appellant again objected, asserting that the question called for "backdoor hearsay."  At a discussion at the bench, the State explained that the testimony was being offered to show why the detective "did what he did; that is, [why he] proceeded in the investigation."  The trial court concluded that the question was not eliciting hearsay or any content and overruled the objection.  Appellant sought, and obtained, a running objection to the testimony.

The prosecutor then again asked Detective Lutey about the importance of reviewing the video of the forensic interview:

Q.  So I think the question was why is it important for you, a child abuse detective, to review that video?

A.  It's essential to our investigation to watch that video because that is in this case [J.F.]'s opportunity to tell law enforcement and to provide a statement, an official statement of what happened.  If in the interview she states that there was some type of abuse, then at that point we move forward with the investigation.

Q.  Is it fair to say that that kind of dictates what your next step is with regard to the investigation?

A.  Absolutely, because if she doesn't make any statement there, typically we're done with the case.

In his third point of error, appellant complains that the trial court erred by allowing this testimony because it constituted inadmissible "backdoor hearsay."

21

As we noted previously, hearsay is a statement, other than one made by the declarant while testifying at a trial, offered in evidence to prove the truth of the matter asserted, Tex. R. Evid. 801(d), and is inadmissible except as provided by the rules of evidence or statute, Tex. R. Evid. 802. The hearsay prohibition cannot be circumvented by eliciting the substance of the statement in indirect form. *Schaffer v. State*, 777 S.W.2d 111, 113 (Tex. Crim. App. 1989). If the content of a statement is presented by implication, such "backdoor hearsay" is subject to the same rules and limitations as the more common form of hearsay. *Cerda v. State*, No. 03-12-00582-CR, 2014 WL 4179359, at *2–3 (Tex. App.—Austin Aug. 22, 2014, pet. ref'd) (mem. op., not designated for publication); *Gilbert v. State*, 874 S.W.2d 290, 295 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd); *see Schaffer*, 777 S.W.2d at 113. Whether testimony violates the hearsay prohibition necessarily turns on how strongly the content of an out-of-court statement can be inferred from the context; the question is whether the strength of the inference produces an "inescapable conclusion" that the evidence is being offered to prove the substance of an out-of-court statement. *Head v. State*, 4 S.W.3d 258, 261–62 (Tex. Crim. App. 1999); *Cerda*, 2014 WL 4179359, at *2. "An analysis of whether the impermissible inference is so overriding as to fall within the hearsay prohibition will necessarily turn on the specific factual circumstances of a given case." *Head*, 4 S.W.3d at 262 n.4.

Appellant complains that the State called the detective as a witness "to communicate to the jury the purport of J.F.'s hour-long forensic interview with the police: that she had described continuous sexual abuse by her father in such a way that the entire police department believed her." However, hearsay by inference, or "backdoor hearsay," violates the prohibition against hearsay because it presents the content or substance, indirectly, of the out-of-court statement. Here, the

22

complained-of testimony did not convey the content of J.F.'s out-of-court statements, even by implication. Detective Lutey did not give any specifics about J.F.'s comments during the forensic interview; he simply confirmed that she made a statement, which dictated how he proceeded with his investigation. This is comparable to an officer testifying that the police received a report of a crime and, based on that report, conducted an investigation. The fact that the detective testified that he reviewed the video of the forensic interview and concluded that J.F. made allegations that warranted further investigation did not convey the contents of any statements made during the interview. In no way did the detective convey J.F.'s descriptions of the acts of sexual abuse that she alleged that appellant perpetrated against her.

Furthermore, as appellant acknowledges, "[a]n arresting officer should not be put in the false position of seeming just to have happened upon the scene, he should be allowed some explanation of his presence and conduct." *Schaffer*, 777 S.W.2d at 114–15. Therefore, "testimony by an officer that he went to a certain place or performed a certain act in response to generalized 'information received' is normally not considered hearsay because the witness should be allowed to give some explanation of his behavior." *Poindexter v. State*, 153 S.W.3d 402, 408 (Tex. Crim. App. 2005), *overruled in part on other grounds by Robinson v. State*, 466 S.W.3d 166, 173 & n.32 (Tex. Crim. App. 2015). Of course, the officer "should not be permitted to relate historical aspects of the case, replete with hearsay statements in the form of complaints and reports, on the ground that [he] was entitled to tell the jury the information upon which [he] acted." *Schaffer*, 777 S.W.2d at 114–15. "The appropriate inquiry focuses on whether the 'information received' testimony is a general

description of possible criminality or a specific description of the defendant's purported involvement or link to that activity." *Head*, 4 S.W.3d at 261.

Here, Detective Lutey did not convey any specific details about what J.F. disclosed during the forensic interview. Rather, his testimony merely described, in a general way, the allegation of sexual abuse made and the actions that he took after viewing the video. The prohibition against backdoor hearsay does not prohibit a witness from testifying about actions he took in response to an out-of-court statement, but only from detailing the contents of the statement when doing so. *See Schaffer*, 777 S.W.2d at 114–15 (holding it was permissible for police officer to testify that officer was acting in response to "information received," but officer was not permitted to relate historical aspects of case, which were replete with hearsay statements); *Dunbar v. State*, No. 03-12-00315-CR, 2014 WL 2741237, at *5 (Tex. App.—Austin June 13, 2014, pet. ref'd) (mem. op., not designated for publication) ("Witnesses are generally allowed to explain that an out-of-court statement caused the witness to take a particular action so long as the testimony does not strongly imply the content of the out-of-court statement."); *see, e.g.*, *Trevino v. State*, No. 03-17-00156-CR, 2017 WL 5119190, at *2 (Tex. App.—Austin Nov. 3, 2017, pet. ref'd) (mem. op., not designated for publication) (explaining that trial court could have reasonably concluded that officer's testimony relaying complaints made by area residents was offered to explain why police had decided to conduct prostitution sting operation in that area).

Further, the test for "backdoor hearsay" is whether the "'State's *sole intent* in pursuing [a] line of questioning was to convey to the jury' the contents of out-of-court statements." *Head*, 4 S.W.3d at 262 (quoting *Schaffer*, 777 S.W.2d at 114). Because the content of J.F.'s

out-of-court statements was not impliedly presented in the detective's testimony, we are unable to conclude from the record that the State's sole intent in offering the complained-of testimony was to convey the content or substance of J.F.'s out-of-court statements. *See id.* (concluding that trial court could have reasonably determined that State's intent in questioning witness was not solely to convey out-of-court statement).

Accordingly, for the above reasons, we conclude that the trial court did not abuse its discretion in allowing the complained-of testimony of the detective. *See Gurka v. State*, 82 S.W.3d 416, 421 (Tex. App.—Austin 2002, pet. ref'd) (trial court's decision to admit testimony objected to on basis of backdoor hearsay is subject to abuse-of-discretion standard); *Head*, 4 S.W.3d at 262 n.4 (review of trial court's decision to allow disputed testimony is tempered by general rule that trial judge's evidentiary ruling on hearsay objection will be upheld absent abuse of discretion). We overrule appellant's third point of error.

**Extraneous-Conduct Evidence**

During the State's rebuttal case in the guilt-innocence phase of trial, the trial court admitted the testimony of M.H., appellant's former stepdaughter, who testified that appellant did "sexual things" to her for "a good while" when she was younger. M.H. recalled multiple incidents over the span of several years, from when she was seven or eight years old until she was eight or ten. She described appellant repeatedly trying to touch her breasts and "below her waist" on her "vagina area" (though she pushed his hands away), showing his unclothed penis to her, masturbating in front of her (sometimes ejaculating), and putting his erect penis on her vagina (moving "in a back and forth motion").

25

The State offered M.H.'s testimony pursuant to section 2(b) of article 38.37 of the Texas Code of Criminal Procedure "for any bearing the evidence has on relevant matters, including the character of the defendant and the acts performed in conformity with the character of the defense" as well as pursuant to "[Rule] 404(b) to rebut the defensive theory of fabrication." Appellant objected on several grounds. First, "with respect to 38.37, Section(2)(b)," appellant asserted that there was "an ex post facto problem" because the alleged offenses pre-dated the enactment of the statutory provision. Appellant further complained about the admission of the evidence under section 2(b) of article 38.37 because, he claimed, that statutory provision "is unconstitutional under the U.S. due process clause, [and the] Texas due course of right [sic] provision" since it "conflicts" with the "common law prohibition against using a person's bad character in order to prove an act of conformity therewith." Finally, appellant objected to M.H.'s testimony under Rule 403, asserting that the evidence was "demonstrably more prejudicial than its relevance." The trial court overruled all of appellant's objections.

In three points of error, appellant challenges the admission of M.H.'s testimony. In his fourth point of error, he contends that the trial court erred in admitting the testimony under article 38.37 because the admission of character-conformity evidence violated his constitutional rights to due process and due course of law. In his fifth point of error, he asserts that the trial court erred in admitting the testimony under article 38.37 because the application of the statute violated the ex post facto provisions of the United States and Texas constitutions. In his sixth point of error, appellant argues that the trial court erred in admitting M.H.'s testimony because it was "significantly more prejudicial than probative."

26

We do not address appellant's contentions that the trial court erred in admitting M.H.'s testimony pursuant to section 2(b) of article 38.37 because the State also offered M.H.'s testimony under Rule 404(b) as rebuttal for appellant's fabrication defense.[6] An evidentiary ruling will be upheld if it is correct on any theory of law applicable to the case. *Henley*, 493 S.W.3d at 93; *Sandoval*, 409 S.W.3d at 297; *see De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009) ("[I]f the trial court's evidentiary ruling is correct on any theory of law applicable to that ruling, it will not be disturbed even if the trial judge gave the wrong reason for his right ruling."); *Gonzalez v. State*, 195 S.W.3d 114, 126 (Tex. Crim. App. 2006) ("[A]n evidentiary ruling . . . will be upheld on appeal if it is correct on any theory of law that finds support in the record.").

Texas Rule of Evidence 404(b) prohibits the admission of extraneous conduct ("crimes, wrongs, or other acts") to prove a person's character in order to show that the person acted in accordance with that bad character on a particular occasion. *See* Tex. R. Evid. 404(b)(1). However, extraneous-conduct evidence may be admissible when it has relevance apart from character conformity. *Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011); *Pina v. State*, No. 03-17-00129-CR, 2018 WL 1547272, at *5 (Tex. App.—Austin Mar. 30, 2018, no pet.) (mem. op., not designated for publication); *Martinez v. State*, No. 03-14-00106-CR, 2016 WL 806718, at *2 (Tex. App.—Austin Feb. 24, 2016, no pet.) (mem. op., not designated for publication). Evidence of extraneous conduct may be admissible for some other purpose, such as to show motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *See* Tex. R. Evid. 404(b)(2); *Montgomery*, 810 S.W.2d at 387–88. This list is illustrative—the

---

[6] Appellant did not object at trial to the admission of M.H.'s testimony on this basis.

exceptions are neither mutually exclusive nor collectively exhaustive. *See De La Paz*, 279 S.W.3d at 343. Evidence of extraneous-conduct evidence may also be admissible to rebut defensive theories raised by the defense. *See Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009) (rebuttal of defensive theory is "one of the permissible purposes for which [relevant] evidence may be admitted under Rule 404(b)"); *see also Dabney v. State*, 492 S.W.3d 309, 318 (Tex. Crim. App. 2016) (defensive theory raised in voir dire and opening statements opened door to extraneous-offense evidence); *Bass v. State*, 270 S.W.3d 557, 563 (Tex. Crim. App. 2008) (defense opening statement opens door to admission of extraneous-offense evidence to rebut defensive theory raised in opening statement).

The record reflects—and the parties do not dispute—that throughout the course of trial, appellant advanced the defensive theory of fabrication, which claimed that J.F. was falsely accusing appellant of sexually abusing her because she wanted him out of the way so she could engage in a relationship with I.R. Appellant's counsel alluded to it during jury selection and opening statement, developed it through cross-examination of the State's witnesses and direct examination of defense witnesses, and asserted it during closing jury argument. Based on the evidence before it, the trial court could have concluded that the evidence of appellant's extraneous prior sexual abuse of his former stepdaughter rebutted the defensive theory of fabrication. Thus, the record supports the admission of M.H.'s testimony under Rule 404(b) to rebut appellant's fabrication defense. *See, e.g., Bass*, 270 S.W.3d at 563 (concluding that extraneous-offense evidence that defendant had sexually abused two other girls was admissible to rebut defensive theory that complainant's allegations were "pure fantasy" and "pure fabrication"); *Navarro v. State*, 535 S.W.3d 162, 168 (Tex.

28

App.—Waco 2017, pet. ref'd) (concluding that extraneous-offense evidence was admissible to rebut defense theory of fabrication, which asserted that complainant was making up sexual-assault allegations because of defendant's relationship with new love interest). Consequently, the trial court did not abuse its discretion in admitting the complained-of extraneous-conduct evidence concerning appellant's sexual abuse of M.H. when she was a child. *See Gaytan v. State*, 331 S.W.3d 218, 225–26 (Tex. App.—Austin 2011, pet. ref'd) (concluding that because "it was at least subject to reasonable disagreement whether [appellant's] opening statement advanced defensive theory of fabrication," trial court did not abuse its discretion by admitting extraneous-offense evidence in rebuttal).

Regarding appellant's complaint of unfair prejudice, asserted in his sixth point of error, Rule 403 of the Texas Rules of Evidence allows for the exclusion of otherwise relevant evidence when its probative value is substantially outweighed by the danger of unfair prejudice. Tex. R. Evid. 403. The rule favors the admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial. *Davis v. State*, 329 S.W.3d 798, 806 (Tex. Crim. App. 2010); *Gallo v. State*, 239 S.W.3d 757, 762 (Tex. Crim. App. 2007). "The term 'probative value' refers to the inherent probative force of an item of evidence—that is, how strongly it serves to make more or less probable the existence of a fact of consequence to the litigation—coupled with the proponent's need for that item of evidence." *Davis*, 329 S.W.3d at 806; *see Casey*, 215 S.W.3d at 879. "'Unfair prejudice' refers to a tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Davis*, 329 S.W.3d at 806.

All testimony and physical evidence are likely to be prejudicial to one party or the other. *Id.*; *Jessop v. State*, 368 S.W.3d 653, 694 (Tex. App.—Austin 2012, no pet.). Thus, "[t]o violate Rule 403, it is not enough that the evidence is 'prejudicial'—it must be *unfairly* prejudicial." *Vasquez v. State*, 67 S.W.3d 229, 240 (Tex. Crim. App. 2002); *accord Pina*, 2018 WL 1547272, at *5. It is only when there exists a clear disparity between the degree of prejudice produced by the offered evidence and its probative value that Rule 403 is applicable. *Davis*, 329 S.W.3d at 806; *Hammer*, 296 S.W.3d at 568; *Gaytan*, 331 S.W.3d at 227; *see Johnson*, 490 S.W.3d at 911 ("Under Rule 403, the danger of unfair prejudice must substantially outweigh the probative value."). In determining whether such disparity exists, our analysis under Rule 403 includes, but is not limited to, the following factors: (1) the probative value of the evidence, (2) the potential to impress the jury in some irrational yet indelible way, (3) the time needed to develop the evidence, and (4) the proponent's need for the evidence. *Jenkins v. State*, 493 S.W.3d 583, 608 (Tex. Crim. App. 2016); *Hernandez v. State*, 390 S.W.3d 310, 324 (Tex. Crim. App. 2012); *Shuffield v. State*, 189 S.W.3d 782, 787 (Tex. Crim. App. 2006). The record here shows that the probative force of the evidence was strong, that the State's need for the evidence was great, and that the tendency of the evidence to suggest a decision on an improper basis was no more so than in other prosecutions involving child sexual abuse.

Regarding the probative value of the evidence, throughout the trial appellant repeatedly presented to the jury the notion that J.F. was falsely accusing appellant of sexual abuse. Thus, the probative value of the extraneous-conduct evidence was significant in that evidence of appellant's prior sexual abuse of his former stepdaughter, another young girl with whom he had a

"father-daughter" relationship, helped to rebut appellant's defensive theory of fabrication—particularly given the similarity of the age range during which the sexual abuse occurred and the sexual acts perpetrated. Therefore, it would not have been outside the zone of reasonable disagreement for the trial court to have found that the evidence was highly probative.

Concerning the Sate's need for the evidence, the Court of Criminal Appeals has explained:

> [S]exual assault cases are frequently "he said, she said" trials in which the jury must reach a unanimous verdict based solely upon two diametrically different versions of an event, unaided by any physical, scientific, or other corroborative evidence. Thus, the Rules of Evidence, especially Rule 403, should be used sparingly to exclude relevant, otherwise admissible evidence that might bear upon the credibility of either the defendant or complainant in such "he said, she said" cases.

*Hammer*, 296 S.W.3d at 561–62. Here, there was no physical evidence (such as medical evidence or scientific evidence) and no eyewitness to corroborate J.F.'s testimony. Thus, the State needed the evidence of appellant's extraneous conduct to lend credibility to her testimony as well as to rebut appellant's theory of fabrication. Consequently, it would not have been outside the zone of reasonable disagreement for the trial court to have found that the State's need for the evidence was great.

Finally, the evidence had little potential to impress the jury in an irrational way. While the Court of Criminal Appeals has recognized that "sexually related bad acts and misconduct involving children are inherently inflammatory," *Pawlak v. State*, 420 S.W.3d 807, 811 (Tex. Crim. App. 2013) (citing *Wheeler v. State*, 67 S.W.3d 879, 889 (Tex. Crim. App. 2002); *Montgomery*, 810 S.W.2d at 397), the court has further recognized that "the plain language of Rule 403 does not

31

allow a trial court to exclude otherwise relevant evidence when that evidence is merely prejudicial." *Id.* The extraneous conduct here was no more prejudicial or fundamentally different in character than appellant's charged offense. In fact, the quality of the extraneous-conduct evidence—firsthand recollection of events of sexual abuse from the victim when she was a child—was similar to that of the charged offense.

On this record, because of the highly probative value of the evidence, it would not be outside the zone of reasonable disagreement for the trial court to have found that whatever prejudicial effect the evidence might have would not "substantially outweigh" the probative force of that evidence. *See* Tex. R. Evid. 403.

For the above reasons, we cannot say that the trial court's decision to admit M.H.'s testimony pursuant to Rule 404(b) to rebut appellant's fabrication defense and over appellant's Rule 403 objection was an abuse of discretion. Consequently, we overrule appellant's fourth, fifth, and sixth points of error.

## Cumulative Harm

Finally, in his seventh point of error, appellant argues that his conviction should be reversed because of the cumulative harm resulting from trial-court error.

The cumulative-error doctrine provides that the combined effect of multiple errors can, in the aggregate, constitute reversible error, even though each individual error, considered separately, was harmless. *Gamboa v. State*, 296 S.W.3d 574, 585 (Tex. Crim. App. 2009); *Chamberlain v. State*, 998 S.W.2d 230, 238 (Tex. Crim. App. 1999). To implicate the cumulative-error doctrine, however, the alleged errors must actually constitute error. *Gamboa*,

296 S.W.3d at 585; *see Jenkins*, 493 S.W.3d at 613 (concluding that because appellant failed to show that trial court erred, there was no error to cumulate); *Chamberlain*, 998 S.W.2d at 238 (reiterating that non-errors do not produce harm in their cumulative effect).

Here, we have determined that the purported errors identified by appellant were not error; thus, there is no possibility of cumulative harm. *See, e.g.*, *Murphy v. State*, 112 S.W.3d 592, 607 (Tex. Crim. App. 2003) ("Because we have found little or no error in the above-alleged points, there is no harm or not enough harm to accumulate."). Accordingly, we overrule appellant's seventh point of error.

## CONCLUSION

Having concluded that the trial court did not abuse its discretion by limiting appellant's cross-examination of J.F. to exclude the sexting evidence, by admitting J.F.'s hearsay statements to the SANE, by admitting the detective's testimony about J.F.'s forensic interview, or by admitting M.H.'s testimony about appellant's sexual abuse of her, and further concluding that appellant's claim of "cumulative harm" resulting from trial error is without merit, we affirm the trial court's judgment of conviction.

_____

Melissa Goodwin, Justice

Before Justices Goodwin, Triana, and Smith

Affirmed

Filed:   February 22, 2019

Do Not Publish

33